Filed 2/2/22  Conservatorship of D.W. CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Person of D.W. | H047399 |
| _____ | (Santa Clara County |
| | Super. Ct. No. 1986-1-MH-029095) |
| MARY ANN WARREN, as Public Guardian, etc., | |
| Petitioner and Respondent, | |
| v. | |
| D.W., | |
| Objector and Appellant. | |

This appeal involves a proceeding under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.).[1]  Following a summary reestablishment hearing, the trial court reappointed the Santa Clara County Public Guardian (public guardian) as appellant D.W.'s conservator.  On appeal from that judgment, D.W. contends the trial court prejudicially erred when it failed to advise her on the record of her right to a jury trial and did not obtain from her a personal waiver of that right.  D.W. asserts the trial court erred under the LPS Act, as well as violated her constitutional rights

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

to due process and equal protection.  For the reasons explained below, we affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND

D.W., who is in her mid-50s, has been the subject of conservatorship proceedings for much of her adult life.[2]  On April 18, 2019, the public guardian petitioned for reappointment as LPS conservator for D.W., alleging she remained gravely disabled and, as the result of a mental disorder, was unable to provide for her own basic needs for food, clothing, or shelter.  (§ 5008, subd. (h)(1)(A).)  The petition was supported by declarations from two physicians.[3]  (§ 5361.)

The trial court issued a written citation for conservatorship (§ 5350; Prob. Code, § 1823), which was served on D.W. and her appointed attorney from the public defender's office.  The written citation ordered D.W. to appear at a hearing on May 16, 2019, and stated, inter alia:  "You have the right to a court or jury trial on the issue of grave disability.  The request for a jury trial must be made within five days of the hearing."

On May 16, 2019, the trial court held a status hearing on a number of conservatorship matters, including the public guardian's reappointment petition for D.W.  D.W. was not personally present but was represented by her attorney.  At the start of the hearing, D.W.'s attorney stated:  "I've had a chance to attempt to communicate with my clients and to the extent that there's any matters that I'm submitting upon[,] those are ones where there's a waiver of any confrontation clause or hearsay objection as to the petitions, investigation reports, doctors [*sic*] declarations.  I've otherwise informed my

---

[2] D.W. was first placed in a temporary LPS conservatorship in 1987, when she was in her early 20s. She was intermittently conserved from 1993 until 2005. From 2006 until the reestablishment proceedings at issue here in 2019, the trial court continuously reestablished her LPS conservatorship.

[3] As the underlying details of the petition about D.W.'s mental illness are not material to our analysis, we do not recount them here.

2

clients of their right to be present, their right to a jury trial and their right to a court trial." The public guardian's attorney then questioned, "And unless you say otherwise they've waived their rights to those?" D.W.'s attorney responded: "Correct."

The trial court specifically addressed D.W.'s matter later that day. When D.W.'s matter was called, D.W.'s attorney told the trial court that "[D.W.] requests a summary hearing. I am requesting May 30[, 2019]." The trial court set the matter for a summary hearing to occur on that date.

On May 30, 2019, the trial court conducted a hearing, at which D.W. appeared with her attorney. At the start of the hearing, D.W.'s attorney stated "[D.W.] is asking the Court for an opportunity to speak to the Court. [¶] She is waiving her right to a jury trial as well as a court trial. [¶] To the extent that there is reliance upon affidavits from physicians or court investigator reports we would waive any hearsay and confrontation clause objections." The trial court did not advise D.W. on the record of her right to a jury trial or elicit a personal waiver of that right from her.

Following the trial waiver entered by D.W.'s counsel on her behalf, D.W. personally addressed the trial court about several matters that primarily involved her housing. D.W. did not inform the court that she desired a court or jury trial on the matter of her conservatorship. D.W. stated that she wanted her conservator removed. D.W. stated her "landlady" had been "pimping" her out and D.W. wanted "to get rid of my conservator so she can't send me there." The trial court asked D.W. whether there was "anything that you want to tell me about things that have changed or developed" since the public guardian was last reappointed in May 2018. In response, D.W. told the trial court "I got wise." When the trial court asked her to explain what she meant, D.W. stated "I realized that my landlady was selling my flesh and I didn't want to go back there." The trial court asked if there was anything else D.W. wished to discuss, D.W. responded "No."

During the course of the summary hearing, D.W.'s attorney referenced certain discussions he had had with D.W. The attorney told the trial court "[D.W.] has talked to me about how she's been medication compliant" and furthermore that "I let her know that we would be talking about her mental health and whether she believes that she has –had a mental disorder today."

At the conclusion of the hearing, the trial court found "[b]ased upon the evidence that's been provided and the Court's review of the file the Court does find that [D.W.] has been advised in writing of her right to a jury trial. The Court is further finding, beyond a reasonable doubt, that [D.W.] does remain a gravely disabled person within the meaning of Welfare and Institutions Code [s]ection 5008[, subdivision] ([h])(1)(A)[,] and for that reason I am going to reappoint the Public Guardian as conservator of [D.W.'s] person."[4] The trial court further found that D.W.'s placement "is the least restrictive and most appropriate alternative placement." The trial court also found "by clear and convincing evidence, that [D.W.], at least presently, is unable to understand the risks and benefits of an alternative to medical treatment related to her grave disability and routine noninvasive medical treatment not related to that disability."

D.W. timely appealed the May 30, 2019 judgment.

## II. DISCUSSION

D.W. contends the trial court violated her statutory rights, as well as her constitutional rights to due process and equal protection, by failing to advise her on the record of her right to a jury trial and by failing to take a personal waiver of her jury trial right. The public guardian asserts that D.W. forfeited her constitutional claims, no error occurred, and even assuming the trial court erred, any error was harmless.[5]

---

[4] D.W. does not challenge on appeal the trial court's finding of grave disability.
[5] The public guardian also argues the appeal is moot given that D.W.'s one-year conservatorship automatically expired. (§ 5361.) A reviewing court has the discretion to decide an otherwise moot case if " 'it raises important issues that are capable of repetition

4

This court recently addressed nearly identical contentions in *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894 (*C.O.*). We discuss that decision in further detail below.

A. *Forfeiture*

The public guardian argues D.W. forfeited her jury trial claims because she fully participated in the summary hearing without objection. D.W. acknowledges, and the record before us supports, that neither she nor her appointed trial counsel presented to the trial court the claims she now asserts.

As a general rule, "a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) The forfeiture doctrine is not absolute, however, as we are "generally not prohibited from reaching a question that has not been preserved for review by a party." (*Ibid.*)

There are no disputed facts at issue, and our review of D.W.'s statutory and constitutional claims are de novo. (See *John L.*, *supra*, 48 Cal.4th at p. 142.) Under these circumstances, we exercise our discretion to address the merits, notwithstanding D.W.'s failure to raise the claims in the trial court. (See *Conservatorship of Bryan S.* (2019) 42 Cal.App.5th 190, 194 (*Bryan S.*).)[6]

B. *The LPS Act*

The LPS Act, enacted in 1967, "governs the involuntary treatment of the mentally ill in California." (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008.) The act "provides one-year conservatorships for those 'gravely disabled as a result of a mental

---

but likely to evade review.' " (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142, fn. 2. (*John L.*); see also *Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 161, fn. 2.) We decide this standard is met here and decline to dismiss the appeal as moot.

[6] As we do not decide this appeal on forfeiture grounds, we need not address D.W.'s alternative claim of ineffective assistance of counsel. (See *Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710 [proposed conservatees in LPS Act proceedings are entitled to effective assistance of counsel].)

health disorder or impairment by chronic alcoholism.' (§ 5350.)" (*Conservatorship of K.P.* (2021) 11 Cal.5th 695, 703.)

Section 5350 addresses the procedure for establishing an LPS conservatorship. It states in relevant part: "The procedure for establishing, administering, and terminating a conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code, except as follows: [¶] . . . [¶] (d)(1) The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether he or she is gravely disabled. Demand for court or jury trial shall be made within five days following the hearing on the conservatorship petition. If the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, the demand shall constitute a waiver of the hearing. [¶] (2) Court or jury trial shall commence within 10 days of the date of the demand . . . . [¶] (3) This right shall also apply in subsequent proceedings to reestablish conservatorship." (§ 5350.)

Division 4 of the Probate Code–incorporated by reference into section 5350– includes Probate Code section 1828. That statute provides in relevant part "before the establishment of a conservatorship of the person or estate, or both, the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury." (Prob. Code, § 1828, subd. (a)(6) (hereafter Probate Code section 1828(a)(6).) Additionally, the trial court must "[a]fter the court so informs the proposed conservatee . . ., consult the proposed conservatee to determine the proposed conservatee's opinion" regarding "[t]he establishment of the conservatorship." (Prob. Code, § 1828, subd. (b)(1).)

A hearing to reestablish a conservatorship is largely conducted according to the same rules that govern the initial establishment of a conservatorship. " 'The conservatorship may be reestablished in summary fashion at an initial court hearing, or, upon request within five days of the initial hearing, through a full court or jury trial.

6

(§§ 5350, subd. (d), 5365, 5362, subd. (b); [citations].)' " (*Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 962, italics omitted.) However, unlike the procedure for determining an initial conservatorship petition, the trial court is not statutorily required to conduct a hearing to reestablish a conservatorship. The trial court may, on its own motion, accept or reject the reestablishment petition without first holding a hearing if the proposed conservatee does not request either a hearing or a trial. (*Id.* at p. 965, fn. 7; § 5362, subd. (b).)

A number of courts, including this one, have concluded that a conservatee's counsel in LPS proceedings may in certain circumstances waive the conservatee's right to jury trial. (See *C.O.*, *supra*, 71 Cal.App.5th, at p. 905; *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148 (*Maldonado*).)

C. *Statutory Claims*

D.W. asserts the trial court erred by failing to advise her of her right to a jury trial and failing to obtain a personal waiver of her right to a jury trial. In support of her contentions, she relies on Probate Code section 1828(a)(6), the California Supreme Court's companion cases of *People v. Tran* (2015) 61 Cal.4th 1160 (*Tran*) and *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*), and the decision (by the Second District Court of Appeal, Division 6) of *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 381 (*Heather W.*).

1. Jury Trial Advisement

We agree with D.W. that the language of Probate Code section 1828(a)(6) requires a trial court to advise a proposed conservatee directly of her jury trial right. The LPS Act incorporates this provision of the Probate Code, which reads, "*the court* shall inform *the proposed conservatee* of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury." (Prob. Code, § 1828(a)(6), italics added.)

7

As this court stated in *C.O.*, this statutory language is "very similar, though not identical, to the advisement provisions at issue in *Tran* and *Blackburn*." (*C.O.*, *supra*, 71 Cal.App.5th at p. 908.) This court concluded this language "reflects a legislative intent to 'judicially ensure' the proposed conservatee has knowledge of his or her right to a jury trial." (*Id.* at p. 909.)

As in *C.O.*, the record here does not reflect the trial court provided D.W. with the jury trial advisement. Based on the language of section 5350 and Probate Code section 1828(a)(6), we therefore decide that where, as here, the proposed conservatee is able to and willing to attend the hearing (cf. Prob. Code, § 1825), the trial court must directly advise the individual of his or her right to a jury trial over the matter of the establishment or reestablishment of the conservatorship. (See *C.O.*, *supra*, 71 Cal.App.5th at pp. 908–909.) The trial court's failure to do so here was statutory error.

Before considering whether that advisement error requires reversal of the judgment, we address whether the trial court erred in accepting D.W.'s counsel's waiver of D.W.'s right to jury trial.

### 2. Waiver of the Right to Jury Trial

D.W. asserts the trial court erred in taking the jury trial waiver from her attorney rather than D.W. D.W. appears to assert the trial court committed statutory error when it accepted counsel's waiver of D.W.'s jury trial right. We reject that contention for the reasons explained in *C.O.*, including "the absence of any specific language referencing waiver in either Welfare and Institutions Code section 5350 or the applicable Probate Code provisions" (*C.O.*, *supra*, 71 Cal.App.5th at p. 911) and the decision of the California Supreme Court in *John L.*, *supra*, 48 Cal.4th at page 148.

In *C.O.*, this court held "that (absent circumstances suggesting the proposed conservatee's counsel lacked actual authority, counsel disregarded his client's wishes, or that the proposed conservatee was actually unaware of his right to a trial by jury) counsel may waive on behalf of the proposed conservatee his or her right to have the matter of

8

establishment or reestablishment of the conservatorship decided by jury trial." (*C.O.*, *supra*, 71 Cal.App.5th at p. 911.)

D.W. relies principally on *Tran* and *Blackburn,* rather than any explicit language in the LPS Act, for her claim that a personal jury trial waiver was required. But *Tran* and *Blackburn* do not assist her in this regard. As this court observed in *C.O.*, the statutory schemes examined in *Tran* and *Blackburn* differ significantly from the LPS statutory scheme, because those schemes include express jury trial waiver provisions and provide that the default procedure is by jury trial. (See *C.O.*, *supra*, 71 Cal.App.5th at p. 912.)

Here, there is no dispute that D.W.'s counsel at the May 30, 2019 summary hearing, informed the trial court that D.W. was "waiving her right to a jury trial as well as a court trial."[7] Counsel made this statement in D.W.'s presence, and D.W. does not assert that her counsel failed to accurately communicate her wishes to the court. Indeed, we see no evidence of any such failure in the record. There is also no evidence that D.W. was unaware of her right to jury trial, or that her attorney elected to proceed with a summary hearing over D.W.'s objection. (Cf. *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1251 [holding that the trial court erred by accepting counsel's waiver of the right to jury trial where the conservatee himself on the record requested a " 'full jury trial' "].) Rather, the record reflects that D.W. sought and received the opportunity to personally address the trial court.

We see no basis in the language of the LPS Act or the particular facts and circumstances before us from which to derive the requirement of a personal waiver from the proposed conservatee. (See *C.O.*, *supra*, 71 Cal.App.5th at p. 912.) On this record, we decide the trial court did not violate D.W.'s statutory rights when it accepted

---

[7] In her reply brief, D.W. focuses on the earlier May 16, 2019 hearing when she argues the public guardian "unjustifiably relies on this portion of the proceedings to argue there was a sufficient advisement and waiver to relieve the trial court of any further duty regarding appellant's statutory and constitutional rights." But D.W. does not address the May 30, 2019 hearing at which D.W. was present.

counsel's waiver of D.W.'s right to jury trial before conducting a summary hearing on the matter of the reestablishment of her LPS conservatorship.

D. *Constitutional Claims*

D.W. also asserts that the trial court was required under principles of due process and equal protection to elicit a personal waiver on the record of her right to jury trial.

1. Due Process

D.W. contends the trial court's failure to obtain a personal waiver violated her due process rights.[8] She relies primarily on *Conservatorship of Roulet* (1979) 23 Cal.3d 219, in which the California Supreme Court held under the due process clause of the California Constitution that the State must prove a person is gravely disabled beyond a reasonable doubt and, when the proposed conservatee demands a jury trial, the jury's finding must be unanimous. (*Id.* at p. 235.) She further relies on *Heather W.*, a decision of the Second District Court of Appeal, Division 6, that held, "In conservatorship proceedings pursuant to the LPS Act, the trial court must obtain a personal waiver of a jury trial from the conservatee, even when the conservatee expresses no preference for a jury trial. Absent such a waiver, the court must accord the conservatee a jury trial unless the court finds the conservatee lacks the capacity to make such a decision." (*Heather W.*, *supra*, 245 Cal.App.4th at p. 381.)

This court considered and rejected the same arguments in *C.O.* (See *C.O.*, *supra*, 71 Cal.App.5th at pp. 907–908.) This court discussed at length the California Supreme Court's due process analysis in *John L.*, including its observation that in LPS conservatorship proceedings there are " 'numerous checks [to] sufficiently guard against the risk of erroneous conservatorship decisions, without the need to impose additional

---

[8] While D.W. references her federal right to due process, she does not provide any case law supporting that right in this context. Based on the lack of relevant authority, D.W. has not demonstrated that the procedure here violated her federal constitutional right to due process.

10

waiver-related requirements.' " (*C.O.*, at p. 915.)  In *John L.*, the California Supreme Court decided "a superior court may properly find a waiver of presence and trial rights when informed by the attorney that the proposed conservatee does not want to attend the hearing to establish the LPS conservatorship and does not oppose the conservatorship. Whether the proposed conservatee has knowingly and intelligently waived his presence and trial rights is a question of fact; it may not be presumed that a person found gravely disabled, or one who has been evaluated or treated for a mental disorder, is incompetent to waive such rights." (*John L.*, *supra*, 48 Cal.4th at p. 154.)

Applying these principles here, we conclude substantial evidence supports the trial court's implicit conclusion that D.W. knowingly and intelligently waived her right to a jury trial.  D.W. was present at the May 30, 2019 hearing, and there is no indication in the record that she disagreed with the decision to have her conservatorship decided by a summary hearing, rather than a court or jury trial.  There is also no suggestion in the record that D.W. did not comprehend what her appointed counsel was representing to the trial court on her behalf at the May 30, 2019 hearing.  To the contrary, her counsel's statements to the trial court indicate that counsel had spoken with D.W. about the hearing and D.W. desired a summary hearing.  D.W. does not cite to any evidence in the record that she misunderstood these communications.  Based on the totality of the circumstances here, we perceive no basis upon which to conclude that the trial court's failure to elicit her personal waiver on the record resulted in an unfair hearing.

Additionally, as this court stated in *C.O.*, we respectfully disagree with *Heather W.* to the extent it requires under California's principles of constitutional due process a trial court to obtain a personal waiver from the proposed LPS conservatee.  (See *C.O.*, *supra*, 71 Cal.App.5th at p. 915.)  On the record here, the trial court did not violate D.W.'s constitutional due process rights by failing to obtain on the record a personal waiver from her of her right to a jury trial.  (See *id*. at pp.  915–916; *Maldonado*, *supra*, 173 Cal.App.3d at pp. 147–148.)

11

2. Equal Protection

D.W. also asserts the trial court violated her equal protection rights under the California Constitution and United States Constitution.  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)  She contends she is "similarly situated" to an individual who is committed after pleading not guilty by reason of insanity (NGI) to a criminal offense (Pen. Code, § 1026 et seq.), or an individual who is subject to commitment pursuant to the Mentally Disordered Offender (MDO) Act (*id.*, § 2960 et seq.).  D.W. argues "[t]he common denominator is that the individuals all suffeatr from a treatable mental illness and all three statutory schemes operate under the belief that treatment is one of the underlying goals."  The public guardian disputes D.W.'s equal protection claims, including D.W.'s argument that LPS conservatees are similarly situated to those subject to a NGI or MDO proceeding and therefore the trial court was constitutionally obligated to secure a personal waiver of the right to jury trial from D.W.

This court addressed this question in *C.O.*  (See *C.O.*, *supra*, 71 Cal.App.5th at p. 916.)  In *C.O.*, this court agreed with the decision of *Bryan S.*, *supra*, 42 Cal.App.5th at pages 196–197 that LPS conservatees face materially different circumstances from individuals in NGI or MDO proceedings.  (See *C.O.*, at pp. 916–917.)[9]  This court also distinguished *Blackburn* and *Tran* in deciding that LPS conservatees are not similarly situated to individuals in NGI and MDO proceedings with respect to the waiver of the

[9] The public guardian limits its contention that there was no denial of equal protection to LPS conservatees who, like D.W., are deemed gravely disabled under section 5008, subdivision (h)(1)(A)).  That subsection defines a grave disability as including a "condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing or shelter."  By contrast, section 5008, subdivision (h)(1)(B), provides an alternative definition of a grave disability.  Because this court's decision in *C.O.* also involved a section 5008, subdivision (h)(1)(A) case, we express no opinion whether the same equal protection analysis would apply to individuals deemed gravely disabled under section 5008, subdivision (h)(1)(B)—a question this court did not address in *C.O.*, and which we do not confront here.  (See *C.O.*, *supra*, 71 Cal.App.5th at p. 901.)

right to jury trial.[10]  For the same reasons this court articulated in *C.O.*, we conclude D.W.'s equal protection claims lack merit.  (*Id*. at p. 917.)

Accordingly, we decide the trial court was not obligated by either the California or federal Constitutions under the circumstances here to elicit a personal, on-the-record waiver of D.W.'s right to jury trial for reestablishment of the conservatorship.

E.  *Prejudice*

The parties disagree on the relevant standard for prejudice.  D.W. asserts the failure to advise and elicit a waiver was structural error requiring automatic reversal, whereas the public guardian argues for application of the prejudicial error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836.  In *C.O.*, this court addressed the standard for prejudice.  (See *C.O.*, *supra*, 71 Cal.App.5th at pp. 917–919.)  This court concluded that a failure to personally advise a proposed conservatee of his or her jury trial right did not warrant automatic reversal in all circumstances.  (*Id.* at p. 919)  Rather, under appropriate circumstances, the *Watson* standard applies to such an advisement error.  (*Ibid.*)

In this case, substantial evidence supports the trial court's implied finding that D.W.'s waiver was knowing and voluntary given her presence at the May 30, 2019

---

[10] For this reason, we also reject the applicability of *Conservatorship of E.B.* (2020) 45 Cal.App.5th 986, review granted June 24, 2020, S261812.  In that case, the court recognized that "NGI's, SVP's and MDO's do not share identical characteristics with LPS conservatees" (*id*. at p. 995) but held, for purposes of the testimonial privilege, that they are similarly situated such that the denial of the right to LPS conservatees to refuse to testify violates the equal protection clause.  (*Id*. at pp. 995–996; see *C.O.*, *supra*, 71 Cal.App.5th at p. 917, fn. 8.)

D.W. has also cited the recent decision in *People v. Washington* (2021) 72 Cal.App.5th 453.  This case, which addressed the jury trial advisement and obtaining a personal waiver of the right to a jury trial for individuals subject to commitment proceedings under the Sexually Violent Predator Act (§ 6600 et seq.) (SVP), does not assist her.  Although the Second District Court of Appeal, Division 7, acknowledged that the SVP scheme might violate equal protection principles, it did not decide the issue but instead remanded the matter to the trial court to address in the first instance. (*Washington*, at p. 475.)

hearing when her attorney stated on her behalf that she requested a summary hearing, wanted to address the trial court, and waived her right to a trial. D.W. did not express any disagreement with these statements. Nor did she indicate that her counsel's assertion that she wanted a summary hearing was contrary to her wishes. The record affirmatively demonstrates that D.W. was informed in writing of her right to a jury trial and that she had communicated with her attorney about the type of proceeding she desired. D.W.'s attorney subsequently waived her right to a jury trial on her behalf on the record and in her presence.

While D.W. is correct that the record here does not contain an unambiguous statement from her attorney that he in fact advised D.W. of her right to a jury trial during their previous communications, she does not contend that he failed to do so. At the May 16, 2019 hearing, D.W.'s counsel stated he had informed his clients (one of whom was D.W.) of their right to a jury or court trial. On this record, we conclude there is no basis to infer that counsel, despite this statement to the court, had failed to do so.

In short, while the trial court did not personally provide the statutory advisement to D.W. in court, there is no evidence that D.W. was actually unaware of her right to a jury or court trial. Further, she was personally present at the summary hearing and was able to and did address the court directly. She was present when her attorney waived her jury trial right on her behalf and never expressed any desire for a trial, either by the court or jury. As this court stated in *C.O.*, *Blackburn* supports the application of the harmless error *Watson* standard where the sole error under similar facts is the trial court's failure to directly advise the proposed conservatee of his or her right to jury trial. (*C.O.*, *supra*, 71 Cal.App.5th at pp. 918–919.)

Under the *Watson* standard, "the appellant bears the burden to make an 'affirmative showing' the trial court committed error that resulted in a miscarriage of justice." (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532–533.) D.W. has not satisfied this burden. D.W. does not dispute the trial court's conclusion, based on

14

its review of her file and the evidence provided (including the two physicians' declarations supporting the petition), that she is gravely disabled (see fn. 4, *ante*). Further, nothing in the record suggests D.W. would have elected a jury trial over a summary hearing if the trial court had advised her personally at the court proceeding of her right to the former. The omission of the jury trial advisement was harmless on these facts.

### III.  DISPOSITION

The May 30, 2019 judgment is affirmed.

_____

Danner, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Wilson, J.

**H047399**

*Warren, as Public Guardian v. D.W.*