Filed 3/2/16

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of HEATHER W. | 2d Civil No. B260975 (Super. Ct. No. PR130306) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY PUBLIC GUARDIAN,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>HEATHER W.,<br><br>    Objector and Appellant. | |

In *Estate of Kevin A.* (2015) 240 Cal.App.4th 1241, the trial court found a conservatee to be gravely disabled under the Lanterman-Petris-Short Act ("LPS Act"). (Welf. & Inst. Code, § 5000 et seq.)  Prior to trial, the conservatee told the court he wanted a jury trial.  The trial court, however, accepted the conservatee's attorney's waiver of a jury trial.

The Court of Appeal reversed the trial court's order granting the petition filed by the county public conservator to reestablish a one-year conservatorship.  The court accepted a jury waiver from the conservatee's attorney without determining

---

Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication.  The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

whether the conservatee lacked the capacity to decide whether to proceed by jury trial. (*Estate of Kevin A.*, *supra*, 240 Cal.App.4th at p. 1251.)

Here we decide what is implicit in the holding in *Estate of Kevin A.* In conservatorship proceedings pursuant to the LPS Act, the trial court must obtain a personal waiver of a jury trial from the conservatee, even when the conservatee expresses no preference for a jury trial. Absent such a waiver, the court must accord the conservatee a jury trial unless the court finds the conservatee lacks the capacity to make such a decision.

Heather W. appeals an order reappointing the San Luis Obispo County Public Guardian ("Public Guardian") as her conservator under the LPS Act. The conservatorship order followed a court trial. We conclude, among other things, that the trial court erred by: 1) not advising Heather W. of her right to a jury trial and 2) not obtaining Heather W.'s on-the-record personal waiver of that right without a finding that she lacked the capacity to make a jury waiver. We reverse and remand.

FACTS

In 2013, the Public Guardian petitioned to be appointed an LPS conservator for Heather W. because she was gravely disabled due to a mental disorder. (Welf. & Inst. Code, § 5008, subd. (h)(1)(A).) The trial court granted the petition.

In 2014, the Public Guardian petitioned to be reappointed an LPS conservator for Heather W., alleging she was still gravely disabled as a result of a mental disorder. The trial court set the case for a court trial. Heather W.'s counsel did not request a jury trial. The court advised Heather W. of her right to testify, but did not advise her that she had a right to a jury trial.

At trial, Doctor Rose Drago, a psychiatrist, testified that Heather W. has a "schizoaffective disorder, which is characterized by periods of psychosis intermingled with mood instability. . . . [Heather W.] has delusional content that is of a very paranoid nature. . . . She was homeless for quite a long time." Heather W. had four prior admissions to a "psychiatric health facility." She had been hospitalized seven times in

2

San Luis Obispo County since 2011 because of her "grave disability" and because she is a "danger to others." Heather W. has group therapy at her current treatment facility, but she does not benefit from it "because of her paranoia." She is "not very participatory" in treatment programs. She has "a lack of ability to benefit from . . . resources" in the community.

Drago testified that Heather W. has a history of refusing to take her medications and she is not able to "competently make the decision" about taking medication. Heather W. lacks insight as to her illness and need for treatment. Her mental disorder is accompanied by symptoms that affect her ability "to provide herself with food or clothing or shelter." She was admitted into a psychiatric health facility in 2013 and considered "gravely disabled and a danger to herself at that time." She had been wandering, was disoriented and unable to provide her name. In 2013, Heather W. was in a homeless shelter, but she was "acting bizarrely, pacing, responding to hallucinations." She was not "able to function in their facility."

Drago testified that, while on her own, Heather W. is not "able to carry out a plan of self care." She said, "Given [Heather W.'s] impulsivity and her tendency towards violence at times, . . . I don't think it's good for her to drive a car. I think it's a dangerous situation." Drago recommended that an appropriate level of placement would be in a locked facility: "I think that the AWOL risk is quite high for her walking away from a facility that wasn't locked. I think she needs the structure and the support of one of those facilities for now. Hopefully, she'll stabilize more and be able to go to an unlocked facility, maybe a structured board and care at some point."

Heather W. testified that if the LPS petition is denied, she would "put [herself] through college," work, and find "a room or an apartment." She was participating in the groups offered at the treatment facility. She said, "I am fully competent . . . . I'm only at the hospital because I thought it was a safer place to be than where I was at the time." Heather W. testified that she receives $897 in benefits a

month, is owed $13,000 "in back pay," and "there should be no reason whatsoever that I could not care for myself." She said, "I think I have mild schizophrenia."

The trial court found Heather W. gravely disabled. The trial judge stated, "I'm very worried about [her] number of hospitalizations." The court appointed the Public Guardian as her conservator with the power to "[d]etain and care" for her and require placement "in a suitable institution, facility, home or hospital."

DISCUSSION

*I*

*Right to a Jury Trial*

Heather W. contends the order appointing the Public Guardian as her LPS conservator must be reversed. We agree.

In *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235, our Supreme Court held, "The due process clause of the California Constitution requires that proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act." An LPS commitment order involves a loss of liberty by the conservatee. Consequently, it follows that a trial court must obtain a waiver of the right to a jury trial from the person who is subject to an LPS commitment.

In *People v. Blackburn* (2015) 61 Cal.4th 1113, 1130, our Supreme Court held that in a mentally disordered offender (MDO) commitment proceeding, "the decision to waive a jury trial belongs to the defendant in the first instance, and the trial court *must elicit the waiver decision from the defendant on the record in a court proceeding*." (Italics added) The court added, "But if the trial court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, then control of the waiver decision belongs to counsel, and the defendant may not override counsel's decision." (*Ibid.*)

In *People v. Tran* (2015) 61 Cal.4th 1160, 1167, our Supreme Court held that for extension of hospital commitments for defendants who plead not guilty by reason of insanity (NGI) (Pen. Code, § 1026.5, subd. (b)), "the decision to waive a jury

4

trial belongs to the NGI defendant in the first instance, and the trial court must elicit the waiver decision from the defendant on the record in a court proceeding."  Defendant's counsel may make the decision to waive a jury trial only where the defendant "lacks the capacity to make a knowing and voluntary waiver."  (*Tran*, at p. 1167.)

MDO, NGI, and LPS proceedings have the same underlying goal--protecting the public and treating severely mentally ill persons.  (*People v. Blackburn, supra*, 61 Cal.4th at p. 1122; *People v. Tran, supra*, 61 Cal.4th at p. 1168; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 150.)  In the LPS context, "'[t]he destruction of an individual's personal freedoms effected by civil commitment is scarcely less total than that effected by confinement in a penitentiary.'" (*Conservatorship of Roulet*, *supra*, 23 Cal.3d at p. 224.)  "[T]he gravely disabled person for whom a conservatorship has been established faces the loss of many other liberties in addition to the loss of his or her freedom from physical restraint."  (*Id*. at p. 227.) "Indeed, a conservatee may be subjected to greater control of his or her life than one convicted of a crime."  (*Id*. at p. 228.)  Consequently, the right to a jury trial to contest an LPS conservatorship is a right guaranteed by the California Constitution.  (*Id.* at p. 235.)

Similar to the circumstances in *Blackburn* and *Tran*, LPS commitment proceedings require the court to obtain a personal waiver of the right to a jury trial from the proposed conservatee.  Probate Code section 1828, subdivision (a)(6) provides: "[B]efore the establishment of a conservatorship of the person or estate, or both, *the court shall inform the proposed conservatee* of all of the following . . . .  The proposed conservatee has the right to oppose the proceeding, *to have the matter of the establishment of the conservatorship tried by jury* . . . ."  (Italics added.)  Here the trial judge did not give such an advisement to Heather W. and obtain her personal waiver of that right.

The Public Guardian cites *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, and claims counsel may make the waiver for the proposed conservatee.

5

But *Mary K.* was decided before *Blackburn* and *Tran*, and is distinguishable. In *Mary K.*, "counsel stated he had spoken with his client and she wished to waive a jury trial." (*Id.* at p. 271.) The Court of Appeal noted, "Appellant does not contend her attorney was without actual authority to waive a jury." (*Ibid.*)

By contrast, the record here does not indicate that Heather W. was given the choice to have a jury trial. At trial, two months later, the court advised Heather W. that she had the right to testify, but it did not advise her of the right to a jury trial.

LPS conservatees, MDO's, and NGI's cannot categorically be prevented from making decisions about commitment proceedings simply because they suffer from mental illnesses. As the court said in *Blackburn,* "[M]any persons who suffer from mental illness or related disorders can understand the nature of legal proceedings and determine their own best interests." (*People v. Blackburn, supra*, 61 Cal.4th at p. 1128.) "'The potentially transitory and treatable nature of mental illness and the potentially limited areas of functioning impaired by such illness preclude any categorical inference that an MDO defendant facing a commitment extension proceeding cannot competently decide whether to waive a jury trial.'" (*Id.* at p. 1129.) *Kevin A.* concluded that the "same reasoning is applicable to a commitment extension in an LPS proceeding." (*Conservatorship of Kevin A.*, *supra*, 240 Cal.App.4th at p. 1252.)

The Public Guardian suggests any error is harmless because substantial evidence supports the trial court's order of reappointment for an LPS conservatorship. We agree that Drago's testimony supports the finding that Heather W. is gravely disabled for the purpose of an LPS conservatorship order. (*Conservatorship of Guerrero* (1999) 69 Cal.App.4th 442, 446-447.) But the critical issue here is Heather W.'s fundamental right to decide who hears the evidence to make that finding--a judge or a jury. The trial court's error is not harmless.

In *Tran,* the court said, an "error--resulting in a complete denial of the defendant's right to a jury trial on the entire cause *in a commitment proceeding--is not susceptible to ordinary harmless error analysis and automatically requires reversal*."

6

(*People v. Tran, supra*, 61 Cal.4th at p. 1169, italics added.) But, "[a] trial court's acceptance of counsel's waiver without an explicit finding of substantial evidence that the NGI defendant lacked the capacity to make a knowing and voluntary waiver may be deemed harmless if the record affirmatively shows that there was substantial evidence that the defendant lacked that capacity at the time of defense counsel's waiver." (*Id*. at p. 1170.)

Consequently, a remand is required for the trial court to determine whether Heather W. "lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver." (*People v. Tran*, *supra*, 61 Cal.4th at p. 1170.) The trial court may reinstate its order "if it finds substantial evidence that [she] lacked the capacity to make" such a waiver. (*Ibid*.)

[[*II*

*The Trial Court's Comments and Other Issues*

Heather W. claims the trial court's comments show it shifted the burden of proof, relied on statements by the Public Guardian's counsel instead of evidence, and did not apply the gravely disabled standard. We disagree.

After the presentation of the evidence and counsel's closing statements, the trial court questioned the Public Guardian's counsel about Heather W.'s future level of confinement: "[W]hat does she need to do to get out of the locked facility and get down to a board and care level where it's not locked?" Counsel replied: "[O]ne of the issues that's preventing a reduction in the level of placement for [Heather W.] is intermittent assaultive behavior . . . ." The court replied: "Okay. All right. That's fine."

During the colloquy between the trial court and counsel, Heather W. interrupted and said her "goals" could not be achieved in "a locked facility." The court responded, "[Y]ou have to at this point earn your right to get out of that locked facility and down to the next level . . . ."

7

Heather W. suggests this shows the trial court relied on counsel's statements, switched the burden of proof, and ignored evidence as to whether she was gravely disabled. But unless otherwise shown, we presume the "trial court considered the relevant factors" (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67) and that "the court's order is supported by the record" (*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148).

The trial court's off-hand remarks to Heather W. are distinct from the ultimate issue whether she is currently gravely disabled. (*Conservatorship of Guerrero, supra*, 69 Cal.App.4th at pp. 446-447.) Such oral comments on this collateral issue may not be used to impeach the order or judgment on the ultimate issue. (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 591; *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647.)

Moreover, Heather W.'s trial counsel objected and said, "I'm not sure that's an appropriate criteria for whether or not she is currently today gravely disabled." The trial court's response to this objection shows that it was aware of and followed the correct standard. It said, "[S]he is gravely disabled, continues to be gravely disabled beyond a reasonable doubt." In making this ultimate finding, the court said it was "very worried about the number of hospitalizations that [Heather W.] had." That shows it relied on the evidence. The Public Guardian also correctly notes that at the end of its case in chief, well prior to the colloquy after closing arguments, the court had ruled Drago's testimony was "sufficient evidence" to support a finding that Heather W. was gravely disabled beyond a reasonable doubt. In addition, Drago testified on the level of confinement issue. She recommended a locked facility until Heather W. could "stabilize" and go into an unlocked board and care facility.

Heather W. notes that the letters of conservatorship prohibit her from "[e]ntering into a contract in excess of fifteen dollars." This limitation is supported by substantial evidence. Drago testified that Heather W. did not have the ability "to enter into a contract for more than a nominal sum of money."

8

We have reviewed the parties' remaining contentions and conclude they will not change the result we have reached. The only error Heather W. has shown is on the jury trial issue which requires a conditional reversal. (*People v. Tran, supra*, 61 Cal.4th at p. 1170.)]]

Disposition

The order is reversed and the matter is remanded to the trial court for further proceedings consistent with *People v. Tran, supra*, 61 Cal.4th at page 1170 regarding a jury trial.

CERTIFIED FOR PARTIAL PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.


9

Ginger E. Garrett, Judge

Superior Court County of San Luis Obispo

_____

Jean Matulis, under appointment by the Court of Appeal, for Objector and Appellant.

Rita L. Neal, County Counsel, Susan Hoffman, Deputy County Counsel, for Petitioner and Respondent.