Filed 2/19/25  Conservatorship of G.B. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of G.B. | 2d Civ. No. B336971 (Super. Ct. No. 22PR-0440) (San Luis Obispo County) |
| Public Guardian of San Luis Obispo County,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>G.B.,<br><br>    Objector and Appellant. | |

G.B. appeals after the trial court, following a bench trial, reappointed the Public Guardian of San Luis Obispo County (Public Guardian) as his conservator under the Lanterman-Petris-Short Act (LPS).  (Welf. & Inst. Code, §§ 5350, 5358, 5361.)  Appellant contends reversal is necessary because the trial court failed to properly advise him of his jury trial right and to obtain a

personal waiver of that right pursuant to Probate Code section 1828 and *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378 (*Heather W.*).  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2023, following a jury trial that ended in March 2023, the court appointed the Public Guardian as appellant's LPS conservator.  On December 12, 2023, the Public Guardian filed a petition to be reappointed as appellant's LPS conservator.  That day, appellant was personally served with a citation for reappointment that advised:  "[Y]ou have the right to a jury trial upon this matter if you so desire."

At a January 11, 2024 court date, appellant's counsel indicated appellant "has expressed a preference for a court trial."  After a brief scheduling discussion, the court stated:  "We will just expect to see everyone on February 15th at ten o'clock for the court trial."  Counsel for the Public Guardian then asked:  "Can we obtain a jury trial waiver just while we are here this morning?"  The following exchange transpired:

"The Court:  Yes.  [Appellant's counsel]?

"[Appellant's Counsel]:  [Appellant], you and I discussed whether or not you would prefer a trial in front of the judge or a trial to be heard by the jury, and you told me that you preferred a judge trial.  Is that still your wish?

"[Appellant]:  Yes.

"[Appellant's Counsel]:  And you understand the difference between the two; don't you?

"[Appellant]:  Yes.

"[Appellant's Counsel]:  Okay.

"The Court:  Thank you, [appellant's counsel].

"[Appellant's Counsel]:  Thank you.

2

"The Court:  Okay.  So we will next call the matter on February 15th at ten o'clock.  Thank you, everyone.

"[Appellant's Counsel]:  Thank you, your honor."

The court trial ultimately began on March 28, 2024.  After hearing evidence and argument, the court found the Public Guardian met its burden of demonstrating, beyond a reasonable doubt, that appellant was gravely disabled.  The trial court signed an order reappointing the Public Guardian as appellant's LPS conservator.

## DISCUSSION

Appellant contends reversal is necessary because the trial court failed to properly advise him of his jury trial right and to obtain a personal waiver of that right.  We conclude the court obtained an adequate waiver.  The court did err in failing to advise appellant of his jury trial right under Probate Code section 1828.  However, the error was harmless.

Initially, the Public Guardian asserts appellant "has forfeited the issues brought before this Court."  To the extent such forfeiture occurred here, "because the forfeiture doctrine is not absolute [citation], and there appear to be no disputed facts at issue, we choose to exercise our discretion to address the merits of the claim . . . ."  (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 142.)

In *Heather W.*, a panel of this court held that "[i]n conservatorship proceedings pursuant to the LPS Act, the trial court must obtain a personal waiver of a jury trial from the conservatee . . . ."  (*Heather W.*, *supra*, 245 Cal.App.4th at p. 381; but see *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 912, 915; *K.R. v. Superior Court*, *supra*, 80 Cal.App.5th at p. 143

3

[noting disagreement among courts as to whether personal, on-the-record waiver of the jury trial right is required].)

Appellant claims the court "failed to actually obtain a direct waiver from appellant" and, instead, secured only "a statement of preference." We read the record differently. Counsel for the Public Guardian specifically requested "a jury trial waiver . . . ." Given this tailored request and the prior discussion as to setting a court trial, the clear intent and effect of the colloquy between appellant and his counsel was to waive jury trial. The absence of the word "waiver" during the colloquy itself is not fatal. (Cf. *People v. Sivongxxay* (2017) 3 Cal.5th 151, 169 (*Sivongxxay*) ["[O]ur case law has eschewed any rigid formula or particular form of words that a trial court must use in taking a jury waiver . . ."]; *People v. Doyle* (2016) 19 Cal.App.5th 946, 952 ["'No particular language is necessary to waive a jury trial so long as the words employed disclose in their ordinary, common sense, fair meaning and context an intention to be tried by the court sitting without a jury'"]; *People v. Thomas* (1994) 25 Cal.App.4th 921, 928 ["We do not exalt form over substance . . ."].)

However, the trial court did fail to personally advise appellant of his right to a jury trial pursuant to Probate Code section 1828, subdivision (a)(6). (Prob. Code, § 1828, subd. (a)(6) [providing that the court shall inform the proposed conservatee of the right "to have the matter of the establishment of the conservatorship tried by jury"]; see also Welf. & Inst. Code § 5350.) This provision requires the trial court to directly and personally advise the proposed LPS conservatee of the jury trial right on the record. (*Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at p. 908.) The trial court neglected to do so here.

We conclude the error was harmless. We adopt the standard our Supreme Court employed in the related contexts of mentally disordered offender commitment extensions, *People v. Blackburn* (2015) 61 Cal.4th 1113, 1116 (*Blackburn*), and commitment extensions for people who originally pleaded not guilty by reason of insanity to a criminal offense, *People v. Tran* (2015) 61 Cal.4th 1160, 1163. "[A] trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Blackburn*, at p. 1136; see also *Tran*, at p. 1170.)

In the criminal jury waiver context, our Supreme Court has explained that knowing and intelligent means "'''''made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,''''''" and voluntary means "'''''the product of a free and deliberate choice rather than intimidation, coercion, or deception.''''''" (*Sivongxxay, supra*, 3 Cal.5th at p. 166.) In determining whether a waiver was knowing, intelligent, and voluntary, "we examine 'the totality of the circumstances' unique to each case." (*People v. Morelos* (2022) 13 Cal.5th 722, 753.)

Included among those circumstances is the waiver colloquy. (*Sivongxxay, supra*, 3 Cal.5th at pp. 167-170.) The Court has recommended advisement "of the basic mechanics of a jury trial . . . including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict;

5

and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Id*. at p. 169)

The Court also recommended trial courts "take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury right entails." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) Those steps might include asking: (1) whether "the defendant had an adequate opportunity to discuss the decision with his or her attorney"; (2) whether "counsel explained to the defendant the fundamental differences between a jury trial and a bench trial"; and (3) whether the defendant "understands or has any questions about the right being waived." (*Id*. at pp. 169-170.)

The totality of the circumstances affirmatively shows appellant voluntarily, knowingly, and intelligently waived his right to a jury trial. (See *Conservatorship of Joanne R.* (2021) 72 Cal.App.5th 1009, 1017.) Appellant had just availed himself of the jury trial right in his commitment proceedings the previous year. This recent experience afforded appellant firsthand exposure to the mechanics of a jury trial. A citation personally served on appellant confirmed the existence of the jury trial right at his recommitment proceedings. The colloquy at the hearing indicated appellant had spoken with counsel about trial by court and by jury. Appellant confirmed his understanding of the difference between the two on the record. Appellant's argument on appeal regarding the shortcomings of remote appearance is speculative. In short, the trial court's failure to personally advise appellant of his jury trial right was harmless.

Appellant's authorities do not suggest otherwise. In *Heather W.*, "the record . . . [did] not indicate that Heather W. was given the choice to have a jury trial." (*Heather W.*, *supra*,

6

245 Cal.App.4th at p. 384.)  Here, by contrast, the record shows counsel presented that choice, and an informed appellant freely opted for a court trial.  Appellant also analogizes to several cases that concluded a jury waiver was insufficient.  (*People v. Daniels* (2017) 3 Cal.5th 961; *People v. Jones* (2018) 26 Cal.App.5th 420; *People v. Blancett* (2017) 15 Cal.App.5th 1200.)  However, none of those cases purported to involve an individual who had just undergone a jury trial the prior year.  This key difference in experience circumscribes the import of a trial court advisement.

Finally, we recognize that appellant has been found gravely disabled, and the testimony of two experts indicates appellant suffers from schizophrenia.  Nonetheless, "many persons who suffer from mental illness or related disorders can understand the nature of legal proceedings and determine their own best interests." (*Blackburn*, *supra*, 61 Cal.4th at p. 1128.)  Thus, appellant's condition bars any "'categorical inference' that he is unable to make a determination regarding his right to a jury trial." (*Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1252; *Heather W.*, *supra*, 245 Cal.App.4th at p. 384.)

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.          YEGAN, J.

7

Michael C. Kelley, Judge
Superior Court County of San Luis Obispo

_____

Christian C. Buckley, under appointment by the Court of Appeal, for Objector and Appellant.

Rita L. Neal, County Counsel, and Chelsea K. Kuhns, Deputy County Counsel, for Petitioner and Respondent.