Filed 3/7/25  Conservatorship of the Person and Estate of J.A. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CONSERVATORSHIP OF THE PERSON AND ESTATE OF J.A. | |
| STANISLAUS COUNTY PUBLIC GUARDIAN, | F088122 |
| Petitioner and Respondent, | (Super. Ct. No. 430347) |
| v. | **OPINION** |
| J.A., | |
| Objector and Appellant. | |

## THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Marcus L. Mumford, Judge.

Elaine Forrester, under appointment by the Court of Appeal, for Objector and Appellant.

Thomas Boze, County Counsel, and Jesus Mendoza, Deputy County Counsel, for Petitioner and Respondent.

-ooOoo-

---

\* Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

This appeal involves a proceeding under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.).[1]  After a court trial, the trial court reappointed the respondent Stanislaus County Public Guardian as appellant J.A.'s conservator.  On appeal, J.A. contends reversal is required because the court failed to advise him of his right to a jury trial.  We agree.

## BACKGROUND

On October 18, 2022, the public guardian was appointed LPS conservator of the person and estate of J.A. for a one-year period set to expire on October 17, 2023.  On August 23, 2023, the public guardian, through the county counsel's office, petitioned for reappointment.  On October 11, 2023, the public guardian submitted an ex parte order for the court's signature continuing the conservatorship and setting a hearing for December 29, 2023.  On October 16, 2023, the court signed the order and issued amended letters of conservatorship.

A minute order from December 29, 2023, shows the trial court on that date continued the matter to April 26, 2024, for "Contested LPS Conservatorship."  The minute order is unclear as to whether a hearing was held this day, but at the top of the minute order is printed:  "COURT AND COUNSEL STIPULATE TO WAIVE ALL PARTIES PRESENCES."  On January 3, 2024, the court filed an order signed on December 29, 2023, stating that the parties, through their counsel, have stipulated to "set the matter for hearing on April 26, 2024, and stipulated to continue the LPS conservatorship of the conservatee."  The order continued the matter to April 26, 2024, "for contested hearing," and ordered that second amended letters of LPS conservatorship be issued expiring on that date.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

A court trial was held on April 26, 2024, at which J.A. was present and represented by his counsel. The court began the hearing by confirming J.A.'s identity and the appearances of counsel and the witnesses. The court asked if both sides were ready to proceed, and both counsel confirmed that they were. The parties stipulated to the foundation for medical records and the investigator's report, and also stipulated that the clinical psychologist who was to testify for the public guardian was an expert in forensic psychology. The court accepted the stipulations and admitted the evidence. No one mentioned J.A.'s right to a jury trial.

The public guardian's two witnesses were the conservatorship investigator and the clinical psychologist. It produced evidence that J.A. has schizoaffective disorder, lacks insight into his condition, and is gravely disabled.

J.A. testified on his own behalf and stated he knows he has been diagnosed with "schizophrenic disorder" but disagrees with the diagnosis. He said he believes he has some other condition, but his explanation was unintelligible to the court reporter. He takes medication and would continue to do so if his conservatorship were ended, and he said he would probably hear voices if he stopped taking his medication. He shared a plan to live with his mother if the conservatorship were ended.

At the end of the trial, the trial court found J.A. still suffers from a mental disorder and appears to lack insight into his mental illness. The court did not believe that J.A., given his history, would participate in future treatment if the conservatorship ended. The court found J.A. to be gravely disabled and unable to provide for his own food, clothing, and shelter without the help of a conservatorship. The court ordered that the public guardian be reappointed as the conservator of J.A.'s person and estate, that letters of conservatorship shall issue, and that the conservatorship automatically terminate on October 17, 2024. Letters of LPS conservatorship were issued thereafter.

3.

# DISCUSSION

J.A. argues the order reestablishing his conservatorship must be reversed because the trial court never advised him of his right to a jury trial on the issue of whether he is gravely disabled. We agree. But before turning to the merits, we address two threshold matters.

## I. Mootness

The conservatorship order at issue automatically expired in October 2024, and neither party addresses forfeiture in their briefing.[2] "When a challenged conservatorship has ended, the appeal of that conservatorship is 'technically moot.' [Citation.] Nevertheless, a reviewing court has the discretion to decide an otherwise moot case if ' "it raises important issues that are capable of repetition but likely to evade review." ' " (*Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 903 (*C.O.*).) This standard is met here and we therefore do not dismiss this appeal as moot.

## II. Forfeiture

The public guardian argues J.A. forfeited his jury trial claim because he fully participated in the hearing without objection. We disagree. As a general rule, "a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) But "because the forfeiture doctrine is not absolute [citation], and there appear to be no disputed facts at issue, we choose to exercise our discretion to address the merits of [J.A.'s] claim[.]" (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 142 (*K.R.*).)

---

[2] The appellant's opening brief was filed in August 2024, the respondent's brief was filed in December 2024, and the appellant's reply brief was filed in January 2025.

## III.    The merits

The LPS Act " 'governs the involuntary treatment of the mentally ill in California.' [Citation.]  The act 'provides one-year conservatorships for those "gravely disabled as a result of a mental health disorder or impairment by chronic alcoholism." (§ 5350.)' " (*C.O., supra,* 71 Cal.App.5th at p. 904.)  A proposed conservatee has "the right to demand a court or jury trial on the issue of whether the person is gravely disabled" and that "right … also appl[ies] in subsequent proceedings to reestablish conservatorship."  (§ 5350, subd. (d)(1), (d)(3).)  Further, the LPS Act incorporates Probate Code section 1828, subdivision (a)(6), which provides that "the court shall inform the proposed conservatee of … [¶] … [¶] … the right … to have the matter of the establishment of the conservatorship tried by jury[.]"  (Prob. Code, § 1828, subd. (a)(6); see also *C.O.*, at p. 908 [interpreting provision as "requir[ing] a trial court to personally advise a proposed conservatee of [their] jury trial right"].)

That said, the right to a jury trial in LPS Act commitment proceedings may be waived.  (*C.O., supra,* 71 Cal.App.5th at pp. 905–907.)  As the public guardian notes, there is a split in authority on whether a trial court must "obtain a personal, on-the-record waiver of the jury trial right[.]"  (*K.R., supra,* 80 Cal.App.5th at p. 143; compare *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 384 (*Heather W.*) [holding such a waiver required], with *C.O.,* at p. 913 [holding that, absent certain circumstances, counsel may validly waive proposed conservatee's jury trial right].)  But the decisions agree "that a trial court must personally advise a person of the statutory right to a jury trial in LPS proceedings."  (*K.R.*, at p. 143.)  We independently review whether the trial court complied with the LPS Act.  (See *C.O.*, at p. 904.)

We conclude the trial court's failure to advise J.A. of his right to a jury trial was error requiring reversal.  There is no dispute the trial court never advised J.A. of this right.  Indeed, his right to a jury trial was not mentioned by anyone during the court trial.

As to prejudice, "[a]n error resulting in a complete denial of a person's right to a jury trial on the entire cause in a commitment proceeding is not susceptible to ordinary harmless error analysis and automatically requires reversal." (*K.R., supra,* 80 Cal.App.5th at p. 143; see also *People v. Blackburn* (2015) 61 Cal.4th 1113, 1132–1133 [generally, "fail[ure] to obtain a valid jury trial waiver … denies the defendant his or her statutory right to a jury trial on the entire cause in a civil commitment proceeding" and constitutes miscarriage of justice that requires reversal].) "Here, [J.A.] was not merely denied personal advisement of [his] right to a jury trial; … [he] suffered a complete denial of the 'fundamental right to decide who hears the evidence to make [the grave disability] finding—a judge or a jury. The trial court's error is not harmless.' " (*K.R.*, at pp. 143–144.) The order reestablishing J.A.'s conservatorship must be reversed.

The public guardian concedes that Probate Code section 1828, subdivision (a)(6), required the trial court to personally advise J.A. of his right to a jury trial, but argues that the court's error does not warrant automatic reversal. Citing *C.O., supra,* 71 Cal.App.5th at page 918, it offers the following harmless error standard: "A trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowingly and voluntary." This proposed standard must be rejected, as it is—by its terms—intended for instances where a proposed conservatee has personally waived their jury trial right, which is not the case here.

The public guardian also posits a separate argument that is somewhat unclear. However, the bottom-line conclusion is that the order should be affirmed because "there was substantial evidence supporting the trial court's implicit conclusion that J.A. knowingly and intelligently waived his right to a jury trial." We understand the public guardian to be citing *C.O., supra,* 71 Cal.App.5th 894, for the proposition that a proposed

conservatee's waiver of their right to a jury trial can be inferred from the circumstances. But *C.O.* did not make such a holding, and its true holding is inapplicable here.

In *C.O.*, C.O.'s attorney told the trial court, in C.O.'s presence, that he had spoken to C.O. before the hearing and that C.O. wanted a court trial rather than a jury trial. (*C.O., supra,* 71 Cal.App.5th at p. 902.) The trial court set the matter for a court trial but did not advise C.O. of his right to a jury trial or elicit a personal waiver of that right from him. (*Ibid.*)

The relevant issue on appeal was whether the trial court in an LPS Act proceeding must obtain a personal waiver of the right to a jury trial. (*C.O., supra,* 71 Cal.App.5th at pp. 909–910.) The *C.O.* court departed from *Heather W.*, which had held that the court must obtain such a waiver. (*C.O.*, at pp. 907, 913.) Based on its interpretation of the LPS Act statutory scheme, the *C.O.* court held that, "absent circumstances suggesting the proposed conservatee's counsel lacked actual authority, counsel disregarded his client's wishes, or that the proposed conservatee was actually unaware of his right to a trial by jury[,] counsel may waive on behalf of the proposed conservatee his or her right to have the matter of establishment or reestablishment of the conservatorship decided by jury trial." (*Id.* at p. 911.)

In upholding the waiver, the *C.O.* court "emphasize[d] that there is no evidence in the record that C.O. desired a jury trial, that C.O. was unaware of his right to a jury trial, or that his attorney elected to proceed with a court trial over C.O.'s objection." (*C.O., supra,* 71 Cal.App.5th at p. 913.) The court distinguished *Heather W.* "because there was no indication in the trial court proceedings in that case of the proposed conservatee's wishes or any evidence that the conservatee's attorney had consulted with the conservatee." (*C.O.*, at p. 913.)

As shown, *C.O.* did not hold that a proposed conservatee's waiver of a jury trial can be inferred from the circumstances. The issue in *C.O.* was whether counsel could

7.

make such a waiver on the conservatee's behalf, and the court held that counsel generally could.  Even if we agreed with that holding, it would not apply here because there was no waiver by counsel—indeed, there was no waiver at all.  Moreover, there are no facts in the record to support the claim that substantial evidence exists to support the trial court's implicit conclusion that J.A. "knowingly and voluntarily" waived his right to a jury trial.  In fact, there is no indication the court made such a conclusion at all, nor would the record support one if it had.

## DISPOSITION

The order is reversed.