Filed 3/11/25  Conservatorship of the Person and Estate of S.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CONSERVATORSHIP OF THE PERSON AND ESTATE OF S.M. | |
| STANISLAUS COUNTY PUBLIC GUARDIAN, | F088145 |
| Petitioner and Respondent, | (Super. Ct. No. MH-22-000413) |
| v. | **OPINION** |
| S.M., | |
| Objector and Appellant. | |

## THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Marcus L. Mumford, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Objector and Appellant.

Thomas Boze, County Counsel, and Jesus Mendoza, Deputy County Counsel, for Petitioner and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

This appeal involves a proceeding under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.).[1]  After a court trial, the trial court appointed the respondent Stanislaus County Public Guardian as appellant S.M.'s conservator.  On appeal, S.M. contends reversal is required because the court failed to advise her of her right to a jury trial and obtain a personal waiver of that right.  We conclude the court's failure to advise S.M. of her jury trial right was reversible error.

## BACKGROUND

On January 22, 2024, the Stanislaus County conservatorship investigator petitioned to have the Stanislaus County public guardian appointed as temporary conservator of S.M.'s person and estate under the LPS Act.  On January 29, 2024, the trial court signed an ex-parte order appointing the public guardian as temporary conservator and issued letters of temporary conservatorship.  The letters were to expire on February 23, 2024.  On February 23, 2024, the court signed an order continuing the temporary conservatorship to May 17, 2024, and amended letters were issued that same day.  A minute order from February 23, 2024, reflects the extension of the temporary conservatorship and also states that the matter is continued to May 17, 2024, for "LPS Conservatorship."

A court trial was held on May 17, 2024, at which S.M. was present and represented by her counsel.  The court began the hearing by confirming S.M.'s identity and the appearances of counsel and the witnesses.  The court asked if both sides were ready to proceed, and both counsel confirmed that they were.  The parties stipulated to the foundation for medical records and the investigator's report, and also stipulated that the clinical psychologist who was to testify for the public guardian was an expert in forensic psychology.  The court accepted the stipulations and admitted the evidence.  No one mentioned S.M.'s right to a jury trial.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2.

The public guardian's two witnesses were the conservatorship investigator and the clinical psychologist. It produced evidence that S.M. has schizoaffective disorder, bipolar type; lacks insight into how her medication has helped manage her illness; has a history of treatment noncompliance; and is gravely disabled.

S.M. testified on her own behalf and stated she is aware she has a mental health condition. She said she feels her condition is under control when she is on medication and said she will not stop taking her medication if her conservatorship were ended. She asserted she is not gravely disabled. She shared a plan to live in either of two places if her conservatorship were ended.

At the end of the trial, the trial court found S.M. to be gravely disabled by a mental disorder, meaning she is unable to provide for her own food, clothing, and shelter without the help of a conservatorship. Accordingly, the court ordered that the public guardian be appointed as the conservator of her person and estate, that letters of conservatorship shall issue, and that the conservatorship automatically terminate on May 16, 2025. Letters of LPS conservatorship were issued thereafter.

## DISCUSSION

S.M. argues the order establishing her conservatorship must be reversed because the trial court never advised her of her right to a jury trial or obtained a personal wavier of this right. We conclude the court's failure to advise her of this right requires reversal.

## I. Forfeiture

The public guardian argues S.M. forfeited her jury trial claim because she fully participated in the hearing without objection. We disagree. As a general rule, "a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) But "because the forfeiture doctrine is not absolute [citation], and there appear to be no disputed facts at issue, we choose to

3.

exercise our discretion to address the merits of [S.M.'s] claim[.]" (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 142 (*K.R.*).)

## II. The merits

The LPS Act " 'governs the involuntary treatment of the mentally ill in California.' [Citation.] The act 'provides one-year conservatorships for those "gravely disabled as a result of a mental health disorder or impairment by chronic alcoholism." (§ 5350.)' " (*Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 904 (*C.O.*).) A proposed conservatee has "the right to demand a court or jury trial on the issue of whether the person is gravely disabled" and that "right … also appl[ies] in subsequent proceedings to reestablish conservatorship." (§ 5350, subd. (d)(1), (d)(3).) Further, the LPS Act incorporates Probate Code section 1828, subdivision (a)(6), which provides that "the court shall inform the proposed conservatee of … [¶] … [¶] … the right … to have the matter of the establishment of the conservatorship tried by jury[.]" (Prob. Code, § 1828, subd. (a)(6); see also *C.O.*, at p. 908 [interpreting provision as "requir[ing] a trial court to personally advise a proposed conservatee of [their] jury trial right"].)

That said, the right to a jury trial in LPS Act commitment proceedings may be waived. (*C.O., supra,* 71 Cal.App.5th at pp. 905–907.) As the public guardian notes, there is a split in authority on whether a trial court must "obtain a personal, on-the-record waiver of the jury trial right[.]" (*K.R., supra,* 80 Cal.App.5th at p. 143; compare *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 384 (*Heather W.*) [holding such a waiver required], with *C.O.*, at p. 913 [holding that, absent certain circumstances, counsel may validly waive proposed conservatee's jury trial right].) But the decisions agree "that a trial court must personally advise a person of the statutory right to a jury trial in LPS proceedings." (*K.R.*, at p. 143.) We independently review whether the trial court complied with the LPS Act. (See *C.O.*, at p. 904.)

We conclude the trial court's failure to advise S.M. of her right to a jury trial was error requiring reversal. There is no dispute the trial court never advised S.M. of this

right.  Indeed, her right to a jury trial was not mentioned by anyone during the court trial.  As to prejudice, "[a]n error resulting in a complete denial of a person's right to a jury trial on the entire cause in a commitment proceeding is not susceptible to ordinary harmless error analysis and automatically requires reversal."  (*K.R., supra,* 80 Cal.App.5th at p. 143; see also *People v. Blackburn* (2015) 61 Cal.4th 1113, 1132–1133 [generally, "fail[ure] to obtain a valid jury trial waiver … denies the defendant his or her statutory right to a jury trial on the entire cause in a civil commitment proceeding" and constitutes miscarriage of justice that requires reversal].)  "Here, [S.M.] was not merely denied personal advisement of her right to a jury trial; … she suffered a complete denial of the 'fundamental right to decide who hears the evidence to make [the grave disability] finding—a judge or a jury.  The trial court's error is not harmless.' "  (*K.R.*, at pp. 143–144.)  The order establishing S.M.'s conservatorship must be reversed.

The public guardian concedes that Probate Code section 1828, subdivision (a)(6), required the trial court to personally advise S.M. of her right to a jury trial, but argues that the court's error does not warrant automatic reversal.  Citing *C.O., supra,* 71 Cal.App.5th at page 918, it offers the following harmless error standard:  "A trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowingly and voluntary."  This proposed standard must be rejected, as it is—by its terms—intended for instances where a proposed conservatee has personally waived their jury trial right, which is not the case here.

The public guardian also posits a separate argument that is somewhat unclear.  However, the bottom-line conclusion is that the order should be affirmed because "there was substantial evidence supporting the trial court's implicit conclusion that S.M. knowingly and intelligently waived her right to a jury trial."  We understand the public guardian to be citing *C.O., supra,* 71 Cal.App.5th 894, for the proposition that a proposed

conservatee's waiver of their right to a jury trial can be inferred from the circumstances. But *C.O.* did not make such a holding, and its true holding is inapplicable here.

In *C.O.*, C.O.'s attorney told the trial court, in C.O.'s presence, that he had spoken to C.O. before the hearing and that C.O. wanted a court trial rather than a jury trial. (*C.O., supra,* 71 Cal.App.5th at p. 902.) The trial court set the matter for a court trial but did not advise C.O. of his right to a jury trial or elicit a personal waiver of that right from him. (*Ibid.*)

The relevant issue on appeal was whether the trial court in an LPS Act proceeding must obtain a personal waiver of the right to a jury trial. (*C.O., supra,* 71 Cal.App.5th at pp. 909–910.) The *C.O.* court departed from *Heather W.*, which had held that the court must obtain such a waiver. (*C.O.*, at pp. 907, 913.) Based on its interpretation of the LPS Act statutory scheme, the *C.O.* court held that, "absent circumstances suggesting the proposed conservatee's counsel lacked actual authority, counsel disregarded his client's wishes, or that the proposed conservatee was actually unaware of his right to a trial by jury[,] counsel may waive on behalf of the proposed conservatee his or her right to have the matter of establishment or reestablishment of the conservatorship decided by jury trial." (*Id.* at p. 911.)

In upholding the waiver, the *C.O.* court "emphasize[d] that there is no evidence in the record that C.O. desired a jury trial, that C.O. was unaware of his right to a jury trial, or that his attorney elected to proceed with a court trial over C.O.'s objection." (*C.O., supra,* 71 Cal.App.5th at p. 913.) The court distinguished *Heather W.* "because there was no indication in the trial court proceedings in that case of the proposed conservatee's wishes or any evidence that the conservatee's attorney had consulted with the conservatee." (*C.O.*, at p. 913.)

As shown, *C.O.* did not hold that a proposed conservatee's waiver of a jury trial can be inferred from the circumstances. The issue in *C.O.* was whether counsel could make such a waiver on the conservatee's behalf, and the court held that counsel generally

6.

could.  Even if we agreed with that holding, it would not apply here because there was no waiver by counsel—indeed, there was no waiver at all.  Moreover, there are no facts in the record to support the claim that substantial evidence exists to support the trial court's implicit conclusion that S.M. "knowingly and voluntarily" waived her right to a jury trial. In fact, there is no indication the court made such a conclusion at all, nor would the record support one if it had.

## DISPOSITION

The order is reversed and the matter is remanded to the trial court for further proceedings.