Filed 1/21/26  Conservatorship of C.R. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of C.R.. | 2d Civ. No. B345466 (Super. Ct. No. 24PR-0370) (San Luis Obispo County) |
| PUBLIC GUARDIAN OF SAN LUIS OBISPO COUNTY, as Conservator, etc.<br><br>    Petitioner and Respondent,<br><br>v.<br><br>C.R.,<br><br>    Objector and Appellant. | |

C.R. appeals from an order under the Lanterman-Petris-Short Act (Welf. & Inst. Code[1], § 5000 et seq.; LPS Act) declaring him gravely disabled and appointing the San Luis Obispo Public

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Guardian (Public Guardian) as his conservator.  We reverse and remand.

FACTS AND PROCEDURAL BACKGROUND

In November 2024, the Public Guardian filed an LPS Act petition to be appointed C.R.'s conservator for one year due to an alleged grave disability based on mental health and severe substance use disorders.  The trial court issued a written citation for the LPS conservatorship that was personally served on C.R.  C.R. has not previously been subjected to a one-year LPS conservatorship.

C.R. appeared remotely at a December 2024 pretrial hearing.  His attorney stated he had spoken with him "recently," that C.R. "indicated he was willing to put in a jury trial waiver," and that C.R. "wish[ed] to contest via court trial."  Counsel did not indicate that he explained to C.R. that he had a right to a jury trial, discussed the mechanics of a jury trial, or explained the differences between a jury and court trial.  Nor did counsel indicate that C.R. lacked capacity to waive jury.

The trial court did not take a personal waiver of jury from C.R.  Nor did the court explain the mechanics of a jury trial or explain how a jury trial differed from a court trial.  At another pretrial hearing, C.R.'s attorney told the court, "[T]here was a previous jury trial waiver from my client."  The trial court subsequently held a court trial on the petition.

After testimony from C.R. and a psychiatrist, the trial court granted the petition.  The court found C.R. gravely disabled beyond a reasonable doubt due to a severe substance use disorder.  It appointed the Public Guardian as conservator of C.R.'s person for one year, and ordered him placed in a locked institution for mental diseases (IMD).  It also prohibited him

2

from refusing medical treatment related to his substance use disorder, operating a motor vehicle, possessing a firearm, and executing contracts.

## DISCUSSION

### *The LPS Act*

The LPS Act governs the involuntary treatment of the "gravely disabled" in California so that they may receive individualized treatment, supervision, and placement. (§§ 5350, 5350.1; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 139.) A person is "gravely disabled" if "as a result of a mental health disorder, a severe substance abuse use disorder, or a co-occurring mental health disorder and a severe substance use disorder, is unable to provide for their basic personal needs for food, clothing, shelter, personal safety, or necessary medical care." (§ 5008, subd. (h)(1)(A).)

"When a treatment professional determines a person is gravely disabled and unwilling or unable to accept treatment voluntarily, the county's public guardian may petition to establish a conservatorship. (Welf. & Inst. Code, § 5352; see *Conservatorship of K.P.* [(2021) 11 Cal.5th 695,] 708–709.) If the matter proceeds to trial and the person is found gravely disabled, the court appoints a conservator (Welf. & Inst. Code, § 5350), imposes 'disabilities' as needed (*id.*, § 5357), and determines an appropriate treatment placement (*id.*, § 5358). (See *Conservatorship of K.P.*, at pp. 709–710.) A conservatorship terminates after one year but may be extended for additional one-year terms upon petition. (Welf. & Inst. Code, § 5361.)" (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1095–1096 (*Eric B.*).) A finding of grave disability must be proven beyond a

3

reasonable doubt. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235 (*Roulet*).)

*C.R.'s right to a jury trial*

C.R. contends the trial court committed reversible error because it did not advise him of his right to a jury trial and obtain his personal waiver. We agree.

We review C.R.'s claims de novo. (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142; *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 904.)

A " 'civil commitment for any purpose constitutes a significant deprivation of liberty . . . .' (*Addington v. Texas* [(1979)] 441 U.S. [418,] 425; see [*People v.*] *Blackburn* [(2015)] 61 Cal.4th [1113,] 1119.) 'In addition to physical restraint, "[t]he gravely disabled person for whom a conservatorship has been established faces the loss of many other liberties . . . ." ' ([*Conservatorship of*] *Ben C.* [(2007)] 40 Cal.4th [529,] 540.) Apart from their possible confinement, conservatees may lose the rights to drive, vote, enter contracts, and make decisions about their treatment. (See Welf. & Inst. Code, § 5357.) In light of the potential for such a significant loss of liberty, conservatorship cases are governed by many of the same procedural protections that apply in criminal trials. (See Welf. & Inst. Code, § 5350, subd. (d)(1); but see *Ben C.*, at p. 538.)" (*Eric B.*, *supra*, 12 Cal.5th at pp. 1103–1104.) One such right is a conservatee's right to a unanimous jury verdict on the issue of grave disability. (*Roulet*, *supra*, 23 Cal.3d at p. 235.)

A proposed conservatee is entitled to a jury trial on the issue of grave disability. (§ 5350, subd. (d)(1); *Roulet*, *supra*, 23 Cal.3d at p. 230.) Probate Code section 1828, subdivision (a)(6) states "the court shall inform the proposed conservatee of all of

4

the following: [¶] . . . [¶] The proposed conservatee has the right . . . to have the matter of the establishment of the conservatorship tried by jury."  A trial court's failure to advise a proposed conservatee of their right to a jury trial is statutory error.  (*Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 384 (*Heather W.*); *Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at p. 909; § 5350, subd. (d)(1).)

"[T]he trial court must obtain a personal waiver of a jury trial from the conservatee, even when the conservatee expresses no preference for a jury trial.  Absent such a waiver, the court must accord the conservatee a jury trial unless the court finds the conservatee lacks the capacity to make such a decision."  (*Heather W.*, *supra*, 245 Cal.App.4th at p. 381.)

"[A] person's waiver of the statutory right to a jury trial in LPS civil commitment proceedings must be knowingly and voluntarily made."  (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 143 [collecting authority].)  The failure to obtain a knowing and voluntary jury trial waiver "denies the defendant [or conservatee] his or her statutory right to a jury trial on the entire cause in a civil commitment proceeding."  (*People v. Blackburn*, *supra*, 61 Cal.4th at p. 1132 [jury trial waivers required in proceedings involving offenders with mental health disorders]; see also *People v. Tran* (2015) 61 Cal.4th 1160, 1163 [jury trial waivers required in involuntary commitment proceedings where a defendant pleads not guilty by reason of insanity (NGI)]; *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1250 (*Kevin A.*) [LPS Act shares same purposes as MDO and NGI commitment schemes].)

Our Supreme Court has repeatedly held that the failure to obtain a valid jury trial waiver "defies ordinary harmless error

5

analysis" (*People v. Blackburn, supra*, 61 Cal.4th at p. 1134) and is a " 'miscarriage of justice' within the meaning of California Constitution, article VI, section 13," requiring reversal. (*Id.* at pp. 1132–1133; *Tran, supra*, 61 Cal.4th at p. 1169 [invalid jury waiver in commitment proceeding "is not susceptible to ordinary harmless error analysis and automatically requires reversal"].)

In the criminal jury waiver context, our Supreme Court has also emphasized that " 'knowing and intelligent' " means " ' " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." ' " ' " (*People v. Sivongxxay* (2017) 3 Cal.5th at p. 151, 166 (*Sivongxxay*).) In determining whether a waiver was knowing and intelligent, "we examine 'the totality of the circumstances' unique to each case." (*People v. Morelos* (2022) 13 Cal.5th 722, 753.)

In *Sivongxxay*, our Supreme Court recommended that trial courts advise criminal defendants of the "basic mechanics of a jury trial" including that "(1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Sivongxxay, supra*, 3 Cal.5th at p. 169.) *Sivongxxay* confirmed that no "specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial" is required. (*Id.* at p. 167.)

In *Heather W.*, we concluded the trial court's error in failing to advise a proposed conservatee of their right to a jury trial was not harmless and required reversal. (*Heather W., supra*, 245 Cal.App.4th at pp. 384–385.) There, the trial court "advised

6

Heather W. of her right to testify, but did not advise her that she had a right to a jury trial." (*Id.* at p. 381.) We emphasized that "the right to a jury trial to contest an LPS conservatorship is a right guaranteed by the California Constitution." (*Id.* at p. 383.) *Heather W.* is silent as to whether the proposed conservatee was informed by her attorney that she had a right to a jury trial. (*Id.* at p. 381.)

Here, as in *Heather W.*, counsel did not advise C.R. of his right to a jury trial. Nor did the trial court. Nor does the record show whether C.R.'s counsel explained the mechanics of a jury trial, including a unanimous finding on grave disability, that a jury is comprised of 12 people from the community, the right to participate in jury selection, and that a judge alone would decide whether C.R. was gravely disabled in a court trial. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) Indeed, there is no evidence that C.R. was even aware he had a right to a jury trial.

Instead, the record reflects that in December 2024 C.R.'s attorney stated his client "was willing to put in a jury trial waiver" and "wish[ed] to contest via court trial." Although C.R. appeared at this hearing, the record does not indicate that he was advised of what he was giving up—the right to a unanimous jury verdict on whether he was gravely disabled beyond a reasonable doubt. Without this information, we cannot conclude that C.R. acquiesced in the waiver of his jury trial right because he later proceeded with a court trial. C.R. had not been previously subjected to an LPS conservatorship. We cannot countenance the waiver of the constitutional right to a jury trial (*Heather W.*, *supra*, 245 Cal.App.4th at p. 383) when a conservatee is not properly advised.

But as C.R. points out, control of the waiver decision belongs to counsel when the trial court finds that a proposed conservatee lacks capacity to waive jury. (*Kevin A.*, *supra*, 240 Cal.App.4th at p. 1251.) Reversal is not warranted if there is substantial evidence the proposed conservatee lacked capacity to waive jury. (*Ibid.*; see *People v. Blackburn, supra*, 61 Cal.4th at p. 1130 [in MDO proceedings, substantial evidence of defendant's lack of capacity to waive jury is evidence that "raises a reasonable doubt about the defendant's capacity to make a knowing and voluntary waiver"]; *Tran, supra*, 61 Cal.4th at p. 1167 [same].)

Here, the Public Guardian does not contend C.R. lacked capacity to waive jury in December 2024. Nor does the record support such a finding. And as we observed in *Heather W.*, proposed LPS conservatees "cannot categorically be prevented from making decisions about commitment proceedings simply because they suffer from mental illnesses." (*Heather W.*, *supra*, 245 Cal.App.4th at p. 384; see also *People v. Blackburn, supra*, 61 Cal.4th at pp. 1128–1129.)

The Public Guardian nevertheless contends C.R.'s waiver was knowing and intelligent. It points to the citations served on C.R. stating that he would have a right to a jury trial. And it emphasizes that C.R. was present when his attorney stated that C.R. was "willing" to waive his jury trial right and "wish[ed]" to proceed with a bench trial. The Public Guardian also relies on *Conservatorship of C.O.* to support its contention that reversal is not required. (*Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at p. 919.) We are not persuaded.

In *C.O.*, the proposed conservatee had previously been subjected to an LPS conservatorship, the public guardian

8

petitioned for reappointment, and counsel informed C.O. of the right to a jury trial.  (*Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at pp. 901, 908.)  *C.O.* held that a trial court's failure to personally advise the proposed conservatee of a jury trial right does not, standing alone, warrant automatic reversal.  *C.O.* emphasized that such error is harmless "if the record affirmatively shows, based on the totality of the circumstances," that the "waiver was knowing and voluntary."  (*Id*. at p. 918.)

    *C.O.* is distinguishable because the record "affirmatively demonstrate[d]" that the proposed conservatee "was informed of his right to a jury trial."  (*Conservatorship of C.O.*, *supra*, 71 Cal.App.5th at p. 919.)  The Court of Appeal concluded that counsel can waive jury "absent circumstances suggesting" that the "proposed conservatee was actually unaware" of their right to a jury trial.  (*Id*. at p. 911.)  But that is the situation here.  C.R. had no prior experience with a one-year LPS conservatorship, and counsel and the trial court did not inform C.R. that he had a right to a jury trial.  And because neither counsel nor the trial court explained the mechanics of a jury trial to C.R., we cannot conclude that C.R. knowingly and intelligently waived his right to a jury trial.  (See *Tran*, *supra*, 61 Cal.4th at p. 1170 ["the requirement of an affirmative showing means that no waiver may be presumed from a silent record" (italics omitted)].)

    This case is also unlike *Conservatorship of Joanne R.* (2021) 72 Cal.App.5th 1009, 1019.  There, our colleagues in Division Seven concluded that the proposed conservatee's jury waiver was knowing and intelligent because Joanne R. was informed of " 'the essence of the jury trial right.' "  (*Id*. at p. 1019.)  That included being advised that a jury is comprised of 12 people from the community, that the jury would need to unanimously decide

whether Joanne R. was gravely disabled beyond a reasonable doubt, and that a judge would make that decision in a court trial. (*Ibid.*)  In contrast, here, C.R. did not receive a single advisement. And unlike Joanne R., C.R. had not been previously subjected to an LPS conservatorship.  (*Id.* at pp. 1013–1014.)

We conclude the trial court's failure to advise C.R. of his right to a jury trial is reversible error.  And because the Public Guardian does not contend there was evidence that C.R. lacked capacity to waive jury in December 2024, we do not remand for a capacity determination.  (*Kevin A.*, *supra*, 240 Cal.App.4th at p. 1253.)

DISPOSITION

The order granting the LPS conservatorship petition is reversed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

10

Michael C. Kelley, Judge

Superior Court County of San Luis Obispo

_____

Richard B. Lennon, under appointment by the Court of Appeal, for Objector and Appellant.

Jon Ansolabehere, County Counsel, Chelsea K. Kuhns, Deputy County Counsel, for Petitioner and Respondent.