Filed 5/13/26  Conservatorship of M.T. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| Conservatorship of the Person and Estate of M.T. | B347762<br><br>(Los Angeles County Super.  Ct. No. 25NWMH00263) |
| PUBLIC GUARDIAN OF LOS ANGELES, as Conservator, etc.,<br><br>     Petitioner and Respondent,<br><br>     v.<br><br>M.T.,<br><br>     Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott R. Herin, Judge.  Reversed.

B. Jolene Lewis, under appointment by the Court of Appeal, for Objector and Appellant.

Dawyn R. Harrison, County Counsel, Laura Quiñonez, Assistant County Counsel, William C. Sias, Principal Deputy County Counsel, and Caitlin M. McCann, Deputy County Counsel for Petitioner and Respondent.

_____

**INTRODUCTION**

M.T. appeals from the judgment establishing a one-year conservatorship over her and her estate under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) (LPS Act).[1] She argues substantial evidence did not support the trial court's finding she was "gravely disabled" as a result of a mental health disorder, within the meaning of section 5350. She also argues the court violated the LPS Act and the due process clause of the California Constitution by failing to advise her that she had a right to a jury trial.

We agree with M.T.'s second argument, but not the first. Substantial evidence supported the trial court's finding M.T. was gravely disabled within the meaning of the LPS Act. But the LPS Act requires the court to advise a proposed conservatee of the right to a jury trial on the issue of grave disability. The court did not advise M.T. of her right to a jury trial, and there is no evidence suggesting she knew, either independently or through her counsel, she had such a right. Therefore, we reverse.

_____

[1] Undesignated section references are to the Welfare and Institutions Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Public Guardian Petitions for a Conservatorship Under the LPS Act, Alleging M.T. Is Gravely Disabled as a Result of a Mental Disorder*

In mid-March 2025 officers from the Los Angeles Police Department responded to 911 calls regarding M.T. after she acted violently toward other residents at a homeless shelter where she had been staying. M.T. was placed on an involuntary 72-hour psychiatric hold under section 5150. The Los Angeles County Department of Health Care Services determined M.T. was a danger to others and gravely disabled within the meaning of section 5008 and certified additional 14-day and 30-day holds for M.T.

In late March 2025 M.T. was transferred to College Medical Center in Long Beach. There, two doctors evaluated her, determined she was gravely disabled as a result of a mental disorder (unspecified schizophrenia spectrum), referred the matter to the Office of the Public Guardian for the County of Los Angeles, and recommended an LPS conservatorship.

In April 2025 the Public Guardian filed a petition for the appointment of a conservator of the person and estate of M.T. under the LPS Act (§ 5350). The Public Guardian conducted an investigation and recommended conservatorship.

B.    *The Trial Court Sets the Petition for a Court Trial*

On May 21, 2025 the trial court held a hearing on the Public Guardian's petition.  M.T. was present.  After counsel made their appearances, the following discussion occurred:

"[Counsel for M.T.]:  Your Honor, [M.T.] does not wish to be on conservatorship.  She would like to set a court trial, please.

"The Court:  Is that correct, [M.T.]?

"M.T.:  Yes."

The court set the petition for a court trial on June 23, 2025.

C.    *The Court Finds M.T. Is Gravely Disabled as a Result of a Mental Disorder, and M.T. Appeals from the Judgment*

At the trial Dr. Alete Arom, a forensic psychologist at College Medical Center, testified M.T. was gravely disabled within the meaning of the LPS Act.  Dr. Arom stated M.T. had "unspecified schizophrenia spectrum and other psychotic disorders" characterized by "paranoia and guardedness."  Dr. Arom also stated that M.T. had "superficial insight into her mental health condition" and that, as a result, Dr. Arom did "not believe that [M.T. had] enough insight or understanding" to take her antipsychotic medication voluntarily.  Dr. Arom said M.T. stopped taking her medication prior to her most recent involuntary hospitalization.  M.T. also testified at the trial.

The trial court found M.T. was gravely disabled as a result of a mental disorder, within the meaning of the LPS Act.  The court granted the petition and appointed the Public Guardian conservator over the person and estate of M.T., with the conservatorship to terminate on June 23, 2026.  M.T. timely appealed.

4

**DISCUSSION**

A. *Applicable Law and Standard of Review*

"The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled. [Citation.] The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled [citation], so that he or she may receive individualized treatment, supervision, and placement." (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142; accord, *Public Guardian of Contra Costa County v. Eric B.* (2022) 12 Cal.5th 1085, 1095; *Conservatorship of A.J.* (2025) 109 Cal.App.5th 728; *Enmark v. KF Community Care, LLC* (2024) 105 Cal.App.5th 463, 470.) A person is "gravely disabled" under the LPS Act if, "as a result of a mental health disorder, a severe substance use disorder, or a co-occurring mental health disorder and a severe substance use disorder, [the person] is unable to provide for their basic personal needs for food, clothing, shelter, personal safety, or necessary medical care." (§ 5008, subd. (h)(1)(A); see *Eric B.*, at p. 1095.) "The LPS Act authorizes short-term involuntary detentions [citations] and one-year conservatorships for those who are gravely disabled due to a mental health disorder or chronic alcoholism." (*Eric B.*, at p. 1095; see §§ 5150, 5250, 5350.) "A conservatorship terminates after one year but may be extended for additional one-year terms upon petition." (*Eric. B.*, at p. 1096; see § 5361.)

B.    *Substantial Evidence Supported the Trial Court's Finding M.T. Is Gravely Disabled*

M.T. argues substantial evidence did not support the trial court's finding she was gravely disabled within the meaning of the LPS Act.  Substantial evidence supported that finding.

"In the trial court, 'to establish that a person is gravely disabled, the evidence must support an objective finding that the person, due to mental disorder, is incapacitated or rendered unable to carry out the transactions necessary for survival or otherwise provide for his or her basic needs of food, clothing, or shelter,' and the public guardian must prove beyond a reasonable doubt that the proposed conservatee is gravely disabled. [Citation.]  On appeal, we apply the substantial evidence test to determine whether the record supports the court's finding of grave disability.  The testimony of one witness may be sufficient to support such a finding." (*Conservatorship of Jesse G.* (2016) 248 Cal.App.4th 453, 460-461; accord, *Conservatorship of A.J.*, *supra*, 109 Cal.App.5th 728, 732; *Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134.)

Substantial evidence supported the trial court's finding M.T. was gravely disabled within the meaning of the LPS Act. Dr. Arom stated M.T. had a mental disorder: "unspecified schizophrenia spectrum and other psychotic disorders" that required treatment with medication.  Dr. Arom also stated that M.T. did not believe she had a mental illness and that therefore she lacked insight into her condition and the positive impact medication had on that condition.  Dr. Arom stated that, because M.T. did not like some of the medication's side effects and she did not appreciate the essential role medication played in her treatment, Dr. Arom was "very concerned" M.T. would not

6

continue to seek treatment voluntarily in the absence of a conservatorship.  According to Dr. Arom, if M.T. stopped taking her prescribed medication, "she would significantly deteriorate," as she did after the court terminated her prior conservatorship. Dr. Arom said that without medication M.T.'s planning skills would be "quite limited" and that, as a result, M.T. would likely "have nowhere to live" and be "back in danger."  Dr. Arom emphasized that, when M.T. previously stopped taking her medication, she was unable to provide for her basic necessities, including food, clothing, and shelter, she was physically attacked, and she was living on the street after she was kicked out of a homeless shelter, all of which placed her in danger.

M.T. argues the trial court did not give sufficient weight to her testimony that she was currently complying with her treatment plan, that she was willing to continue treatment voluntarily, and that she had formulated a detailed plan to provide for her food, clothing, and shelter.  The issue on appeal, however, is whether substantial evidence supported the trial court's ruling—not whether substantial evidence would have supported a different ruling.  (See *In re Caden C.* (2021) 11 Cal.5th 614, 640 [determination of the trial court "should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence'"]; *K.F. v. Superior Court* (2014) 224 Cal.App.4th 1369, 1383, fn. 7 ["where substantial evidence, including reasonable inferences drawn from the evidence, supports the trial court's factual finding, an affirmance is appropriate"; that "contrary evidence exists which could support a different finding is not the test"]; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989,

1011-1012 [in conducting substantial evidence review, the appellate court "must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence"].)

C. *The Trial Court Erred by Failing To Advise M.T. of Her Right to a Jury Trial*

M.T. argues the trial court violated her statutory and constitutional rights to a jury trial because the court "did not advise her as to her jury trial rights or obtain from her a personal knowing and intelligent waiver of that right." She is correct.

"Because of the important liberty interests at stake [in an LPS conservatorship proceeding], correspondingly powerful safeguards protect against erroneous findings. 'The proposed conservatee is entitled to demand a jury trial on the issue of his or her grave disability, and has a right to counsel at trial, appointed if necessary. (§§ 5350, 5365.) The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt[,] and the verdict must be issued by a unanimous jury.'" (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 541; see § 5350, subd. (d)(1) ["The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether the person is gravely disabled."]; *Conservatorship of Joanne R.* (2016) 72 Cal.App.5th 1009, 1016 ["A proposed

8

conservatee has a right to a jury trial upon demand at the establishment and annual renewal of a conservatorship."].)

The trial court must directly and personally advise a proposed conservatee of the right to a jury trial.[2] (See *K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 143 ["decisions are in accord that a trial court must personally advise a person of the statutory right to a jury trial in LPS proceedings"]; *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 909 [trial court's failure to personally advise the proposed conservatee of the right to a jury trial was "statutory error"]; *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 381 ["In conservatorship proceedings pursuant to the LPS Act, the trial court must obtain a personal waiver of a jury trial from the conservatee, even when the conservatee expresses no preference for a jury trial."].) Probate Code section 1828, which is incorporated by reference into section 5350, provides that "before the establishment of a

---

[2] There is a split of authority on whether, where the trial court failed to directly advise the proposed conservatee, counsel may waive the right to a jury trial on behalf of the proposed conservatee. (Compare *Conservatorship of Joanne R.*, *supra*, 72 Cal.App.5th at p. 1016 ["'LPS commitment proceedings require the court to obtain a personal waiver of the right to a jury trial from the proposed conservatee.'"] and *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 383-384 [jury trial waiver by counsel is valid only if the proposed conservatee lacked capacity to make a knowing and voluntary waiver] with *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 911 [jury trial waiver by counsel is valid unless circumstances suggest that counsel lacked actual authority from the proposed conservatee, that counsel disregarded the proposed conservatee's wishes, or that the proposed conservatee was unaware of the right to a jury trial].)

conservatorship of the person or estate, or both, the court shall inform the proposed conservatee of . . . [¶] . . . [¶] . . . the right . . . to have the matter of the establishment of the conservatorship tried by jury . . . ." (Prob. Code, § 1828, subd. (a)(6).)

The trial court erred by not advising M.T. she had the right to a jury trial on the issue of grave disability. As stated, the court asked M.T. whether she agreed with her attorney's statements she did not want to be subject to a conservatorship and wanted a court trial, and M.T. said, "Yes." The court did not inform M.T. of her right to a jury trial, nor did the court explain the difference between a court trial and a jury trial. (See *People v. Sivongxxay* (2017) 3 Cal.5th 151, 169-170 [before accepting a waiver of the right to a jury trial in a criminal proceeding, the trial court should advise the defendant "of the basic mechanics of a jury trial" and that, if the defendant "waives the right to a jury trial, the judge alone will decide his or her guilt or innocence"]; *Conservatorship of Joanne R.*, *supra*, 72 Cal.App.5th at pp. 1017-1019 [applying *Sivongxxay* to LPS conservatorship proceedings].)

D.    *The Trial Court's Error Was Not Harmless*

"[U]nder article VI, section 13 of the California Constitution, '[a] judgment may not be reversed on appeal . . . unless "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice."' [Citation.] The constitutional constraint, which applies in civil as well as criminal cases, 'generally "prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial."'" (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 786.) Where, as here, the error is one of

10

state law, reviewing courts typically apply the harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836: "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See *People v. Lewis* (2021) 11 Cal.5th 952, 973; *People v. Epps* (2001) 25 Cal.4th 19, 29.)

But the *Watson* harmless error standard does not always apply. In *People v. Blackburn* (2015) 61 Cal.4th 1113, for example, the Supreme Court considered whether to apply the *Watson* standard where a mentally disordered offender did not personally waive the right to a jury trial. (*Id*. at pp. 1130, 1132-1138.) Like LPS Act proceedings, mentally disordered offender proceedings are civil in nature and may involve involuntary commitment of the offender. (*Id*. at p. 1122.) In concluding the *Watson* standard should not apply, the Supreme Court stated: "The failure to obtain a valid jury trial waiver defies ordinary harmless error analysis. To speculate about whether a defendant would have chosen a jury trial if he or she had been in a position to make a personal choice would pose insurmountable difficulties, as would an inquiry into what effect, if any, that choice would have had on the outcome of the trial. . . . Accordingly, we treat a trial court's failure to obtain a required personal jury trial waiver as tantamount to the denial of a jury trial, and as such, it constitutes a "miscarriage of justice" under article VI, section 13." (*Id*. at p. 1134; see *K.R. v. Superior Court*, *supra*, 80 Cal.App.5th at p. 143 [ "An error resulting in a complete denial of a person's right to a jury trial on the entire cause in a commitment proceeding is not susceptible to ordinary harmless error analysis

11

and automatically requires reversal."]; *Conservatorship of Joanne R.*, *supra*, 72 Cal.App.5th at pp. 1016-1017 ["with respect to civil commitments, the failure of a court to obtain a valid jury trial waiver where required by statute 'denies the defendant his or her statutory right to a jury trial,' and is a '"miscarriage of justice" within the meaning of California Constitution, article VI, section 13 [that] requires reversal without inquiry into the strength of the evidence in a particular case'"]; *Conservatorship of Heather W.*, *supra*, 245 Cal.App.4th at p. 385 [trial court's error in accepting counsel's waiver was not subject to ordinary harmless error analysis and required reversal, unless the record showed the proposed conservatee lacked the capacity to make a knowing and voluntary waiver at the time of counsel's waiver].)

The Supreme Court in *Blackburn* adopted a modified harmless error standard: "The concept of harmless error does have applicability in this context in the following limited sense. . . . [A] trial court's failure to properly advise [a mentally disordered offender] of the right to a jury trial does not by itself warrant automatic reversal. Instead, a trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*People v. Blackburn*, *supra*, 61 Cal.4th at p. 1136; see *People v. Sivongxxay*, *supra*, 3 Cal.5th at p. 166 ["'[w]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case'"].)

Under the modified harmless error standard of *People v. Blackburn*, *supra*, 61 Cal.4th at page 1136 the trial court's failure to advise M.T. of her right to a jury trial was not harmless.

There is no evidence M.T. made a knowing and voluntary waiver of her right to a jury trial.  Unlike *Conservatorship of C.O.*, *supra*, 71 Cal.App.5th 894, for example, there was no evidence that counsel for M.T. advised M.T. of her right to a jury trial, that counsel discussed with M.T. the difference between a court trial and a jury trial, or that M.T. knew she had the right to a jury trial and chose a court trial.  (See *id*. at p. 915.)

The Public Guardian argues that, because M.T. was present during the trial and did not object to the absence of a jury, she knowingly and voluntarily waived her right to a jury trial.  The Public Guardian also argues M.T. "had multiple opportunities to express disagreement with her counsel's representation that she was electing to proceed with a court trial, including during her direct exchanges with the court on both her initial hearing date and her court trial date . . . ."  But as discussed, the record must affirmatively show a valid waiver. (See *People v. Blackburn*, *supra*, 61 Cal.5th at pp. 1136-1137 ["the requirement of an *affirmative* showing means that no valid waiver may be presumed from a silent record"].)  The record does not affirmatively show waiver here.  In addition, M.T. could not "express disagreement" with having a court trial if no one told her that she had the option of a jury trial.  We cannot infer from M.T.'s silence she knowingly waived her right to a jury trial.

## DISPOSITION

The judgment is reversed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.